### Day *vs.* Sizer and others.

When an agreement is made between two parties in relation to com-
mercial paper, with equal knowledge in relation thereto by both
parties, this court will not relieve against such an agreement.

As where A held several notes endorsed, or purporting to be endorsed,
by B, and some of them were discovered to be forgeries, and some
claimed to be paid; a compromise made between A and B, in rela-
tion to such notes, when there was no fraud or concealment on the
part of A, will not be set aside by a court of Chancery.

In the years 1835 and 1836, the complainant had
endorsed several checks for Benjamin Rathbun, pay-

able on time. Some of these checks were discounted by the defendant, H. H. Sizer. Rathbun failed Aug. 1, 1836. After his failure, Sizer had in his possession four checks of Rathbun's purporting to be endorsed by the complainant, and called upon the complainant for payment. Two of these checks were for $1,000 each, one for $500, and one for $2,000. Upon inspection, the endorsements on the two last were ascertained to be forgeries.

One of the $1,000 checks was due 26th January, 1836, and the other previously. Upon the complainant's informing Sizer that he supposed all the checks, endorsed by him for Rathbun, had been taken up; and after considerable negotiation between them, it was agreed that the complainant should give his note to Sizer for the amount of the $1,000 check, due, 26th January, and pay the interest on that check, and that Sizer should release the complainant from his obligation on all the other checks. Afterwards the complainant went, with his attorney, to Sizer's office, to perfect this arrangement, at which time it is claimed that Sizer gave the complainant to understand that the check had been regularly and legally protested.

The complainant executed the note according to the agreement, and took the check, with a view of getting it allowed by Rathbun's assignees under the trusts of that assignment. The clerk of the assignees, however, refused to allow it, as he said the complainant had never been fixed as endorser. The complainant then applied to Sizer to get back the note and restore the checks. This effort, however, finally failed. Sizer passed the note to the City Bank of Buffalo, and after it matured it was sued in

the name of the bank, and the suit was brought against both the complainant and Sizer. Day and Sizer both defended by the same attorney. Soon after the note matured, Sizer, in fact, paid it to the bank, and the suit was carried on for Sizer's benefit, but of this fact the complainant alleges his ignorance, until after the verdict upon it. The complainant deeming that he had no defence as against the bank, suffered an inquest to be taken against him and Sizer, upon which judgement was rendered and execution issued. Sizer had personal property, the complainant had not, but Sizer indemnified the sheriff, who, instead of selling Sizer's personal property, proceeded to advertise the complainant's real estate. The complainant made an application to the Supreme Court, to stay the proceedings upon such execution, as against his real estate, until the personal estate of Sizer should be first exhausted.

This application was denied with costs. The complainant then filed this bill for relief on the ground that he had never been fixed as endorser of the check—that Sizer had induced him to give the note, by fraudulently representing that he had been so fixed, and that he was not aware of Sizer's interest in the suit in favor of the bank, before verdict, so that he could defend the same at law. The case comes on upon pleadings and proofs, the oath of the defendants to the answer being waived.

*T. T. Sherwood*, for complainant,

*S. G. Haven*, for defendants.

THE VICE CHANCELLOR. The complainant to entitle himself to a decree in this cause, must establish by proofs all three of the following propositions.

1. That he was induced to execute the note by the representations of Sizer that he had been fixed as endorser of the check.

2. That he never had been legally fixed as endorser of the check.

3. That he was ignorant of Sizer's interest in the subject matter of the suit at law, before the verdict at law.

If it appears satisfactorily that the complainant executed the note with the full understanding of his legal liabilities at the time, or if it appears that he was in point of fact legally fixed as endorser of the check, the complainant cannot escape from the payment of the note. And if it appears that the complainant knew of Sizer's interest in the note, or that the prosecution of it was continued in the name of the bank, for Sizer's benefit, and that the complainant had such knowledge before the verdict at law, the complainant can have no relief here, as he should in such case have set up his defence at law.

This is a case where the complainant seeks to set aside his own note, after a judgment has been rendered thereon, and execution levied; and after the proceedings have gone thus far at law, it requires clear proof to induce this court to interpose its jurisdiction for the relief of the complainant. This is one of the many cases growing out of the fraudulent financial operations of Benjamin Rathbun. The complainant had been accommodation endorser for Rathbun in many transactions, and he does not seem, himself, clearly to remember whether he had even been legally fixed as endorser upon any of his liabilities. He doubtless supposed, whether he had been fixed or not, that all the paper upon which he was endorser had been taken up by Rathbun.

Rathbun's failure, and the astounding forgeries·by means of which his financial operations were conducted, was calculated to awaken all parties to a vigilant inspection of their rights and liabilities. His endorsers would be anxious to know whether the paper upon which they were liable had been taken care of, and the holders of the paper would be solicitous to know whether their securities were genuine. This brought to light the paper held by Sizer, upon which Day was endorser, and it would seem as if both were disappointed by the developement— the one upon finding that more than half the amount of paper held by him was forged, the other upon ascertaining that his genuine liabilities had not been taken up. This led to a negotiation between the parties, which at first seems to have been conducted by them without the presence of any witnesses ; of what transpired upon that occasion the court are not judicially informed, and the complainant has not chosen to call for Sizer's answer under oath. How far the complainant may have had, within himself, the consciousness that he had been legally fixed as endorser upon the genuine checks, and how far that might have operated upon him in consenting to give his note for only a part, or how far he may at this time have been induced to agree to such an arrangement in the fear that he might possibly be made legally liable for the payment of both the genuine checks, we cannot know. There was, undoubtedly, an arrangement agreed upon between Day and Sizer, when by themselves, by which the whole matter was to be compromised by Day's giving the note in question, and Sizer's executing a release to Day of his liability upon all the other checks.

Mar. 1840.

Day
v.
Sizer and
others.

The first we hear of this transaction, through the testimony, is when the complainant went to Sizer's office with his counsel to complete the arrangement before agreed upon. The conversation which took place on that occasion, is detailed in the deposition of Mr. Spaulding, the counsel who attended the complainant. I doubt, even from this deposition, whether it is perfectly clear that Sizer intended to aver, as a fact within his own knowledge, that notice of protest of the check had been given to the complainant. The check itself was produced to the complainant and his counsel, with the endorsement thereon, " presented Jan'y. 26, 1836," signed with the initials of Ira Hall, jr. When Sizer is asked if the check had been duly protested, Sizer replies that it was done by Mr. Hall at his request, according to the memorandum on the check. In this he evidently refers to the check and memorandum on it, which were then before both the parties, as the evidence upon which he said the check had been protested. This evidence as to its sufficiency, could be judged of by Day and his counsel, as well as by Sizer. Day and his counsel had the means of judging before them, and it seems to me that both parties acted upon this evidence. Doubtless Day and his counsel supposed that Day had been legally fixed as endorser of the check, and there is no satisfactory evidence that Sizer did not suppose the same thing. The evidence upon which this supposition was founded, was before both parties and both acted upon it. As both were equally informed, from any thing that appears in evidence, it seems to me to follow, that a note given under such circumstances, being for the compromise of a larger claim against the complainant, must be

deemed to be valid, unless it should clearly appear

that its execution was induced by the false and fraudulent representations of Sizer. Of this there does not appear to me to be sufficient evidence. Doubtless the complainant executed the note and took the check in the expectation that he should be able to realize the amount of the check out of the assignees of Rathbun, under the trusts of his assignment. Though he was refused the allowance of this check by the clerk of the assignees, it seems to me that he should have pressed the allowance of it upon the assignees themselves. He abandoned his efforts to obtain the amount, quite too easily; at least, there is reason to believe that if properly presented and urged, it would have been allowed. This view of the first point, will dispose of the whole case. It may not be useless, however, to glance for a moment at the question whether the check was, in point of fact, ever protested in a manner to fix the endorser. This depends principally upon the testimony of Ira Hall, jr. and I must say I doubt whether a jury would charge an endorser upon his testimony. He thinks he served the complainant with notice of protest, at the day the check became due ; but he cannot tell where or how he served it. The endorsement upon the check is no sufficient guide, as it is not of itself sufficient to indicate a legal protest to charge the endorser. The check might have been " presented" for payment, and yet the endorser not notified. Hall could not have left the notice at the complainant's house, as he did not live where Hall at the time supposed he did, and he has no particular recollection of giving him either verbal or written notice elsewhere. On the whole, the evidence in this case is not sufficient

to show that the complainant was fixed as endorser, but the complainant himself may have been aware that he had received notice, and that may have been one reason why he executed the note. At any rate, he had before him at the time of executing the note, all the evidence that Sizer had, that he was so fixed, and gave his note with that evidence in view.

There is no proof that there was any agreement between Sizer and Rathbun, to apply these particular checks upon the building contract then existing between them ; and as Rathbun was indebted to Sizer in a large amount, it is necessary that the evidence should apply to these particular checks, before the complainant can be discharged from his note for that reason.

There is no excuse or reason given why Sizer should retain this check from 26th Jan. to 1st Aug. without calling upon either maker or endorser for payment; and this is a circumstance, doubtless, in favor of the complainant, but not conclusive.

In the view that I take of the case, the complainants' bill must be dismissed, with costs to be taxed.